Robert N. Schiff (Bar No. 56072)
David W. Evans (Bar No. 79466)
Scott M. Bloom (Bar No. 183891)
HAIGHT BROWN & BONESTEEL LLP
71 Stevenson Street, 20th Floor
San Francisco, California 94105-2981
Telephone: 415.546.7500
Facsimile: 415.546.7505

Attorneys for Plaintiff
THE AMERICAN INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE AMERICAN INSURANCE COMPANY, a Nebraska corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>AMERICAN RE-INSURANCE COMPANY, a Delaware corporation,<br><br>　　　　Defendant. | Case No. C-05-01218 JSW<br><br>**PLAINTIFF THE AMERICAN INSURANCE COMPANY'S ADMINISTRATIVE MOTION TO REDACT SUMMARY JUDGMENT ORDER**; ORDER<br><br>Judge: Hon. Jeffrey S. White<br><br>Complaint Filed: March 25, 2005<br>Trial Date: November 13, 2006 |

On November 27, 2006, the Court issued an Order Denying Cross-Motions for Summary Judgment ("Order"). The Order included references to the amount of a confidential settlement agreement at p. 2, line 17, and at p. 9, line 23. The court previously granted plaintiff The American Insurance Company's Motion for Leave to File Under Seal certain documents in support of its summary judgment motion that addressed the confidential settlement amount in the underlying action between Fireman's Fund Insurance Company and General Referactories Corporation. [Docket No. 56, Exhibit 1 hereto.]

Pursuant to Local Rule 79-5(c), plaintiff hereby seeks administrative relief requesting that the Court remove Docket No. 87 from the ECF-PACER system, and substitute a redacted Order that omits the confidential settlement amount at p. 2, line 17-18, and p. 9, line 23. A proposed redacted Order is attached as Exhibit 2 hereto.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
San Francisco

FF97-0000012
3200551.1

1

Case No. C-05-01218 JSW
PLAINTIFF AIC'S ADMIN. MOTION TO FILE UNDER SEAL PER LOCAL RULE 79

1 \

2     Plaintiff requests the Court grant the following relief:

3    (1)    Order the Clerk of the Court to strike from the public docket the Order (Document

4           87) and.

5    (4)    Authorize the filing of a redacted Order, redacting the settlement amount referred

6           to at p.2, line 17-18, and p. 9, line 23, where a portion of the settlement is

7           discussed. (as attached hereto as Exhibit 2).

8 Dated: 11/30/06

        HAIGHT BROWN & BONESTEEL LLP

10         By: S.R.

11         Robert N. Schiff
        David W. Evans
12         Scott M. Bloom
        Attorneys for Plaintiff
13         THE AMERICAN INSURANCE COMPANY

18 Dated: December 6, 2006

IT IS SO ORDERED

Judge Jeffrey S. White

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
San Francisco

FF97-0000012
3200551.1

2

Case No. C-05-01218 JSW
PLAINTIFF AIC'S ADMIN. MOTION TO FILE
UNDER SEAL PER LOCAL RULE 79

## DECLARATION OF SCOTT M. BLOOM

I, Scott M. Bloom, hereby declare as follows:

1. I am an attorney at law duly licensed to practice before this Court and all of the Courts of the State of California. I am senior counsel to the law firm of Haight, Brown & Bonesteel, LLP, counsel of record for plaintiff and moving party herein The American Insurance Company (hereinafter "AIC").

2. I have personal knowledge of the matters set forth herein, and if called upon to testify I could and would do so competently.

3. On November 26, 2006, the Court issued an Order Denying Cross-Motions for Summary Judgment (Docket No. 87). At page 2, line 17-18, the Order refers to the settlement amount in the underlying dispute between Fireman's Fund Insurance Company and General Refractories Company. At page. 9, line 23, a portion of the confidential settlement is discussed.

4. The settlement agreement between General Refractories Corporation and Fireman's Fund Insurance Company is confidential. The Court previously granted an administrative motion to seal those portions of the parties' cross-motions for summary judgment which discussed the amount of the settlement (Exhibit 1 hereto). Plaintiff will suffer demonstrable prejudice if the Order is not redacted, as Fireman's Fund Insurance Company contractually is bound to maintain the confidentiality of its settlement with General Refractories Company.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3° day of November 2006, at San Francisco, California.

Scott M. Bloom

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
San Francisco

FF97-0000012
3200551.1

3

Case No. C-05-01218 JSW
PLAINTIFF AIC'S ADMIN. MOTION TO FILE
UNDER SEAL PER LOCAL RULE 79

# EXHIBIT 1

1 Robert N. Schiff (Bar No. 56072)
  David W. Evans (Bar No. 79466)
2 Scott M. Bloom (Bar No. 183891)
  HAIGHT BROWN & BONESTEEL LLP
3 71 Stevenson Street, 20th Floor
  San Francisco, California 94105-2981
4 Telephone: 415.546.7500
  Facsimile:  415.546.7505
5
  Attorneys for Plaintiff
6 THE AMERICAN INSURANCE COMPANY

7

8 UNITED STATES DISTRICT COURT

9 NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 THE AMERICAN INSURANCE COMPANY, a Nebraska corporation, | Case No. C-05-01218 JSW |
| 12 | |
| 13 Plaintiff, v. | ~~PROPOSED~~ ORDER GRANTING LEAVE TO FILE DOCUMENTS AND PORTIONS OF DOCUMENTS UNDER SEAL |
| 14 AMERICAN RE-INSURANCE COMPANY, a Delaware corporation, | |
| 15 | |
| 16 Defendant. | |

17

18

19    Plaintiff The American Insurance Company's motion for leave to file documents under

20 seal under Local Rule 79-5 is hereby granted. Based upon the pleadings and papers filed in

21 support of plaintiff's administrative motion, the Court finds good cause exists to authorize the

22 sealing of certain documents and the sealing of portions of certain documents.

23    The following documents shall be sealed in their entirety: Confidential Declaration of

24 Scott M. Bloom, Esq., in Support of Plaintiff The American Insurance Company's Motion for

25 Summary Judgment, including all exhibits thereto, and Supplemental Confidential Declaration of

26 Scott M. Bloom in Support of Plaintiff The American Insurance Company's Motion for Summary

27 Judgment.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
San Francisco

FF97-0000012
3143356.1

1

Case No. C-05-01218 JSW
[~~PROPOSED~~] ORDER AUTHORIZING FILING UNDER SEAL

1  Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary
2  Judgment, as lodged on May 30, 2006, shall be filed under seal, and plaintiff's Amended Redacted
3  Memorandum of Points and Authorities, filed June 2, 2006, shall constitute the public record of
4  the redacted document.

5  DATED: June 9, 2006

_____
Honorable Jeffrey S. White
Judge of the United States District Court

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
San Francisco

FF97-0000012
3143356.1

2

Case No. C-05-01218 JSW
[PROPOSED] ORDER AUTHORIZING FILING
UNDER SEAL

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

THE AMERICAN INSURANCE COMPANY,

    Plaintiff,

v.

AMERICAN RE-INSURANCE COMPANY,

    Defendant.

No. C 05-01218 JSW

**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court are the cross-motions for summary judgment filed by plaintiff the American Insurance Company ("American Insurance") and defendant American Re-Insurance Company ("American Re"). Having carefully reviewed the parties' papers, considered their arguments and the relevant legal authority, the Court hereby denies both parties' motions.

## BACKGROUND

This dispute centers on a reinsurance certificate between American Insurance and American Re. American Insurance's affiliate, Fireman's Fund Insurance Company ("FFIC"), provided excess insurance to General Refractories Company ("GRC"), a manufacturer of asbestos. At issue are the two facultative reinsurance policies[1] issued by FFIC to GRC. The first policy provides coverage from September 15, 1978 to August 1, 1979, with a limit of $10 million, in excess of $25 million, in excess of $1 million (the "1978-79 excess policy"). (Declaration of Scott M. Bloom in Support of American Insurance's Motion ("Bloom Decl."),

---

[1] "There are two basic types of reinsurance policies-facultative and treaty. ... In facultative reinsurance, a ceding insurer purchases reinsurance for a part, or all, of a single insurance policy. Treaty reinsurance covers specified classes of a ceding insurer's policies." *Unigard Sec. Ins. Co., Inc. v. North River Ins. Co.*, 4 F.3d 1049, 1053-54 (2d Cir. 1993).

1  Ex. 3.) The second policy provides coverage from August 1, 1979 to August 1, 1980, with a
2  limit of $10 million, in excess of $25 million, in excess of $1 million (the "1979-80 excess
3  policy"). (Declaration of Maryann C. Hayes ("Hayes Decl."), Ex. 2 (DBR01575-77).)
4      Pursuant to the reinsurance certificates, American Re agreed to insure fifty percent of
5  two excess liability policies. (Bloom Decl., Ex. 3; Hayes Decl., Ex. 2 (DBR01575-77).) The
6  reinsurance certificates provide that the reinsurer, American Re, "agrees to indemnify [FFIC]
7  against losses or damages which [FFIC] is legally obligated to pay with respect to insurance
8  which is issued during the terms of this Certificate under the policy reinsured." (*Id.*)
9      GRC faced tens of thousands of lawsuits based on the asbestos it manufactured. (Bloom
10 Decl., Ex. 9.) GRC and FFIC disputed the extent and availability of coverage under FFIC's
11 excess policies and GRC filed a lawsuit against FFIC alleging that it breached a policy covering
12 1971-74 and that FFIC engaged in bad faith denial of benefits. (Bloom Decl., Ex. 6.) Although
13 the excess insurance policies underlying the reinsurance certificates were not yet directly at issue
14 in the pending state court lawsuit, in a settlement with FFIC, GRC agreed to "buy back" the
15 insurance policies. The settlement included a release of all claims, the dismissal of the state
16 court lawsuit, as well as a pending federal suit between the parties, and buy backs of all polices
17 ever issued to GRC by FFIC, for a total of _____ paid in 2004. (Bloom Decl., Ex. 27;
18 Hayes Decl., Ex. 19.) American Insurance contends that _____ of this settlement was for
19 the "buy back" of the 1978-79 and 1979-80 excess policies. (*Id.*) More specifically, American
20 Insurance valued the settlement of the excess insurance policy underlying the reinsurance
21 certificate with American re at $5,895,500 for the 1978-79 excess policy, and thus billed
22 American Re for fifty percent of this amount, $2,947,750. (*Id.*, Ex. 21.)
23     American Re disputes that it owes any money to American Insurance under the
24 reinsurance certificates. In essence, American Re argues that the underlying insurance for which
25 the excess policies provided coverage were not exhausted and that the asbestos litigation against
26 GRC was excluded from coverage of the underlying policies.
27     The Court will address the additional specific facts as required in the analysis.
28

# ANALYSIS

## A.  Legal Standard on Summary Judgment.

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court's task to "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering

3

a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**B.  Cross-Motions for Summary Judgment.**

Both parties now move for summary judgment, arguing that the Court may determine American Re's liability under the reinsurance contracts as a matter of law.

**1.  American Insurance's Motion: "Follow the Settlement" or "Follow the Fortunes" Provision.**

American Insurance's primary argument in support of its motion is that a "follow the settlement" or "follow the fortunes" clause should be read into the reinsurance certificate, and therefore the Court should apply the standard which is more favorable towards American Insurance in determining whether American Re owes it $2,947,750 based on the settlement agreement between FFIC and GRC.

The "follow the settlements" or "follow the fortunes" doctrine prevents reinsurer's "from second guessing good-faith settlements and obtaining de novo review of judgments of the reinsured's liability to its insured." *National Amer. Ins. Co. of Calif. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 535 (9th Cir. 1995) (quoting *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1199 (3rd Cir. 1995)); *see also Christiania Gen. Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir.1992) ("Under the 'follow the fortunes' doctrine, a reinsurer is required to indemnify for payments reasonably within the terms of the original policy, even if technically not covered by it. A reinsurer cannot second guess the good faith liability determinations made by its reinsured, or the reinsured's good faith decision to waive defenses to which it may be entitled.") (citations omitted).

Most reinsurance certificates now contain a "follow the settlement" or "follow the fortunes" clause. *National Amer. Ins.*, 93 F.3d at 535. However, it is undisputed that the reinsurance certificates at issue here do not contain such a clause. American Insurance nevertheless argues that a "follow the settlement" or "follow the fortunes" clause should be read into the reinsurance certificates as a matter of law.

4

i.   **Choice of Law.**

The parties dispute whether California or Pennsylvania applies to this contract dispute, and thus which forum's law governs the determination of whether a "follow the settlement" or "follow the fortunes" provisions should be read into the reinsurance certificate. "Generally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." *ABF Capital Corp. v. Grove Properties Co.*, 126 Cal. App. 4th 204, 215 (2005) (quoting *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 919-20 (2001)); *see also Marsh v. Burrell*, 805 F. Supp. 1493, 1496 (N.D. Cal. 1992).

The applicable law is determined by performing "choice of law analysis under California's 'governmental interest' approach." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1119 (9th Cir. 2002) (citation omitted).[2] Pursuant to the governmental interest test, the Court must first examine the substantive law of each jurisdiction to determine whether the laws differ as applied to the relevant transaction. *See Liew v. Official Receiver and Liquidator*, 685 F.2d 1192, 1196 (9th Cir. 1982). Second, if the laws do differ, the Court must determine whether a

---

[2] Based on *Arno v. Club Med Inc.*, 22 F. 3d 1464 (9th Cir. 1994), American Insurance argues that because this is a contract dispute, the Court should apply California Civil Code § 1646 ("Section 1646"), rather than the governmental interest test, to determine which forum's law governs. California Civil Code § 1646 provides: "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." In *Arno*, the Ninth Circuit noted that there appears to be some difference of opinion as to whether California's choice of law test for contracts is the governmental interest test or the test under Section 1646. *Arno*, 22 F.3d at 1469 n. 6. However, the court in *Arno* did not resolve which test applied because it found that under either test, California law governed. *Id.* Without citing to any supporting evidence, American Insurance argues that the reinsurance certificate was "made" in Pennsylvania. Even if the Court determined that the test of Section 1646 should apply, and if the Court could accept American Insurance's proposition that the contract was made in Pennsylvania and thus Pennsylvania law applies, American Insurance has not provided any authority demonstrating what Pennsylvania law is on this issue of whether a "follow the settlement" or "follow the fortunes" provisions should be read into the reinsurance certificates. In the absence of any relevant decision from a Pennsylvania court, the Court would have to determine what a Pennsylvania court would decide if faced with this issue. As discussed below, the Court determines that a Pennsylvania court would follow the majority of courts in accordance with California law and find that a "follow the settlement" or "follow the fortunes" is not implied as a matter of law into every reinsurance contract. Therefore, as in *Arno*, the Court need not resolve the apparent conflict among state courts as to which choice of law test applies.

5

"true conflict" exists in that each of the relevant jurisdictions has an interest in having its law applied. *Id.* "If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied." *McGhee*, 871 F.2d at 1422. On the other hand, if more than one jurisdiction has a legitimate interest, "the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions. At this stage, the court seeks to identify and apply the laws of the state whose interest would be the more impaired if its law were not applied." *Id.* (internal quotations marks omitted). However, "[o]nly if the trial court determines that the laws are materially different *and* that each state has an interest in having its own law applied, thus reflecting an actual conflict, must the court take the final step and select the law of the state whose interests would be 'more impaired' if the law were not applied." *ABF Capital*, 126 Cal. App. 4th at 215 (2005) (quoting *Washington Mutual Bank*, 24 Cal. 4th at 919-20).

In *National American*, the Ninth Circuit analyzed the status of California law on whether, and under what conditions, a "follow the settlements" clause may be read into a reinsurance contract that does not contain an explicit "follow the settlements" provision. *National Amer.*, 93 F.3d at 535-37. The court accepted as true that, under California common law, if a reinsurance policy did not contain a "follow the settlement" clause, a reinsurer retained the right to assert any coverage defense that might have been available to the reinsured against the insured at the time of the settlement. *Id.* at 536. However, a "follow the settlement" clause could still be implied into the contract if there was evidence that, contrary to the common law, a custom or usage to "follow the settlements" existed at the time the contract was entered into and there was no evidence of a contrary intent from the terms of the contract. *Id.* at 536-37. Whether, at the time the reinsurance policy was executed, there existed a custom or usage to "follow the settlements" is a question of fact. *Id.* at 537. In *National American*, the court found that there was conflicting evidence creating a question of fact regarding whether, at the time the reinsurance policies were entered into, "follow the settlement" clauses were widely understood

6

by reinsurance industry custom and practice to be a tacit part of every facultative reinsurance contract. *Id.*

American Insurance does not cite to any Pennsylvania law on this issue. Instead, American Insurance relies on a district court case from Ohio that held a "follow the settlement" clause is implied as a matter of law into every reinsurance contract. *See International Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, 868 F. Supp. 917, 920 (S.D. Ohio 1994). The Ohio district court in *International Surplus* concluded without providing any reasoning that a "follow the settlement" or "follow the fortunes" doctrine applies to all reinsurance contracts, even if the reinsurance policy does not expressly include such a provision. The Ohio court simply relies on two prior cases for this proposition, *National American v. Certain Underwriters*, slip op. 91-4021 (C.D. Cal. 1991) and *Mentor Insurance Company v. Norges Brannkasse*, 996 F.2d 506, 516 (2nd Cir. 1993), neither of which are applicable. Although the Central District of California court in *National American* applied the "follow the settlement" doctrine to a policy without such an express clause, the district court was subsequently reversed by the Ninth Circuit in *National American*, 93 F.3d at 535-37. The Second Circuit in *Mentor Insurance* did not hold that the "follow the settlement" or "follow the fortunes" doctrine applies to all reinsurance contracts that do not expressly include such a provision; the reinsurance policy at issue had an express "follow the fortunes" provision. *Mentor Ins.*, 996 F.2d at 516. Thus, the conclusion of the Ohio district court is unsupported.[3]

Other courts that have examined the issue have rejected the proposition that the "follow the settlements" or "follow the fortunes" doctrine is implied as a matter of law into all

---

[3] American Insurance cites two other cases in support of the proposition that the "follow the settlements" doctrine is implied as a matter of law into all reinsurance contracts: *Mentor Insurance*, 996 F.2d at 516, and *Aetna Casualty and Surety Co. v. The Home Insurance Co.*, 882 F. Supp. 138, 1350. As discussed above, American Insurance's reliance on *Mentor Insurance* is misplaced because the reinsurance policy at issue contained an express "follow the fortunes" provision. *Id.* at 516. *Aetna Casualty* does not assist American Insurance either. In that case, the district court examined evidence submitted by the parties on the existence of a custom or usage regarding the "follow the settlements" doctrine. Based on the absence of any conflicting evidence in the record, the court found that the "follow the settlements" doctrine applied to the reinsurance policy at issue. *Aetna Casualty*, 882 F. Supp. at 1347-48. Thus, the court did not hold that the "follow the settlements" doctrine is implied as a matter of law into all reinsurance contracts.

7

reinsurance policies in the absence of such an express provision. *See North River Ins. Co. v. Employers Reins. Corp.*, 197 F. Supp. 2d 972, 984-86 (S.D. Ohio 2002); *Michigan Township Participating Plan v. Federal Ins. Co.*, 233 Mich. App. 422, 431 (1999); *cf. Affiliated F. M. Ins. Co. v. Employers Reins. Corp.*, 369 F. Supp. 2d 217, 227 (D.R.I. 2005) (the court was "hesitant" to read the "follow the settlements" doctrine into a reinsurance contract as a matter of law "given such divergent precedent" on this issue, but found that it did not need to resolve the issue).

The court in *North River* declined to follow *International Surplus*. *See North River*, 197 F. Supp. 2d at 984-86. The court noted that the *International Surplus* court did not have any support for its conclusion that the "follow the settlements" or "follow the fortunes" doctrine is inherent in every reinsurance contract as a matter of law. *Id.* at 984-85. The court further noted that the *International Surplus* court did not have the benefit of the Ninth Circuit's decision in *National American* and did not hear evidence on the prevailing custom or practice in the reinsurance industry at the time the contract at issue was entered into. *Id.* at 985. The court in *North River* reasoned that specific "follow the settlement" clauses are often included in reinsurance certificates: "[I]f the "follow the settlements" doctrine were so widely accepted as an inherent part of every reinsurance contract so that the doctrine may be read into every certificate as a matter of law, there would be no need to include such clauses in reinsurance contracts." *Id.* at 986. Finally, the defendant submitted evidence refuting the argument that the "follow the settlements" doctrine was implied in every contract as a matter of custom or practice. Accordingly, the court held "that there [was] no sound basis for applying the 'follow the settlements' doctrine as a matter of law." *Id.*

The Court finds that the majority of courts addressing this issue, and the better reasoned opinions, have rejected the proposition that the "follow the settlements" or "follow the fortunes" doctrine may be read into every reinsurance policy as a matter of law. In the absence of any authority from Pennsylvania on this issue, the Court will not impute the minority, less well-reasoned position to a Pennsylvania court. Accordingly, the Court finds that there is no conflict under California and Pennsylvania law, and thus, will apply California law and not read the

8

"follow the settlements" or "follow the fortunes" doctrine into the reinsurance contract as a matter of law.

### ii. The Reinsurance Certificates.

Even though the Court has determined that the "follow the settlements" or "follow the fortunes" doctrine may not be implied into the reinsurance contracts as a matter of law, American Insurance still would be entitled to present evidence demonstrating whether, at the time the reinsurance certificates were entered into, "follow the settlement" or "follow the fortunes" clauses were widely understood by reinsurance industry custom and practice to be a tacit part of every facultative reinsurance contract. However, American Insurance has not done so. Thus, based on the record at this procedural stage, the Court cannot conclude that a "follow the settlements" or "follow the fortunes" clause may be implied into the reinsurance contracts at issue. Accordingly, the Court denies American Insurance's motion for summary judgment.

### 2. American Re's Motion: FFIC's (and thus American Insurance's) Liability on the Excess Insurance Reinsured by American Re.

In the absence of a "follow the settlements" or "follow the fortunes" clause, American Re may assert defenses that would have been available to the reinsurer against the insured at the time of settlement. American Insurance, "[a]s the party seeking indemnity, with a judgment ordering it to pay, ... [has] the burden of demonstrating that it was actually or at least potentially liable on the underlying claim[s] and that the settlement amount was reasonable." *In re Cossu*, 410 F.3d 591, 595 (9th Cir. 2005). American Re argues that summary judgment should be granted in its favor because the $50 million in underlying coverage was not exhausted and GRC's asbestos claims were barred by the asbestosis exclusion. American further argues that summary judgment is appropriate because the American Insurance claims FFIC paid to GRC to buy back the 1978-79 and 1979-80 excess policies was not actually for these policies; the $12 million was never paid to asbestos claimants and FFIC did not consider the settlement value of these policies to be anything more that a nuisance amount. (American Re Mot. at 1.)

### i. Exhaustion.

9

American Re agreed to reinsure FFIC only for losses or damages which FFIC was legally obligated to pay on the underlying insurance policies. (Bloom Decl., Ex. 3; Hayes Decl., Ex. 2 (DBR01575-77).) Both of the excess policies at issue provided insurance in excess of $25 million in underlying insurance. (Bloom Decl., Ex. 3; Hayes Decl., Ex. 2.) Thus, there would be no obligation to pay on the excess policies until the underlying insurance policies were exhausted. GRC faced tens of thousands of lawsuits based on the asbestos it manufactured. (Bloom Decl., Ex. 9.) GRC asserted to FFIC that, in reference to the 1978-79 and 1979-80 excess policies, "GRC [had] exhausted all of its insurance as to which the carrier [had] agreed to provide coverage for the asbestos related claims." (*Id.*, Ex. 10.) Moreover, although FFIC took the position that GRC had not provided proof of loss and exhaustion of the underlying coverage, "if the underlying policies [had not] been exhausted, they probably [would] be exhausted soon." (Hayes Decl., Ex. 3 (DBR01759-60).) The Court finds that this evidence is sufficient to create a genuine issue of material fact as to whether the insurance policies underlying the excess policies were exhausted.

### ii. Asbestosis Exclusion.

American Re further argues it had no obligation to pay on the excess policies because the underlying policies for which the excess policies provided coverage excluded "claims made against the Insured arising out of asbestosis or any similar condition caused by asbestos." (Hayes Decl., Ex. 2 (DBR01574, DBR05179).) According to American Re, FFIC asserted in the litigation between it and GRC that the exclusions precluded coverage for the lawsuits and claims against GRC.[4] American Re further argues that FFIC, and thus American Insurance, should be precluded from arguing now that the exclusion does not bar recovery. In the litigation between it and FFIC, GRC took the position that the exclusion in 1978-79 and 1979-80 excess

---

[4] American Re also seeks to submit evidence regarding a position FFIC took regarding this exclusion in other litigation. American Insurance objects to this evidence as irrelevant and unduly prejudicial.

The Court did not need to consider the remaining documents of which the parties request that the Court take judicial notice in order to resolve the cross-motions for summary judgment. Therefore, the Court denies these requests as moot.

10

policies was unenforceable, and that even if the policies did contain a valid exclusion, the exclusion was limited to asbestosis. (Hayes Decl., Ex. 2 (DBR01562-63).) FFIC counsel retained to determine the scope and validity of the exclusion explained that it did not know the facts as to whether regulatory approval of the exclusion had been sought, and if so, if approval had been given or rejected. (Hayes Decl., Ex. 1 (AIC02953).) Its counsel determined that "if regulatory approval was required and not obtained, that fact alone would not make the exclusion void or unenforceable. If, on the other hand, the exclusion was submitted and disapproved, there may be serious questions as to whether it was enforceable." (Hayes Decl., Ex. 1 (AIC02954).) FFIC's counsel thus advised "[i]n the absence of clear evidence that our policy language lacked the required regulatory approval, and given the legal authority that indicates a policy may be valid and enforceable even if it was issued without the required approval, we believe that the exclusion probably is valid and enforceable and that we should take the position that the insured is bound by it." (Hayes Decl., Ex. 1 (AIC02955).) Notably, FFIC's counsel's position was not an unequivocal statement that the exclusion was valid and enforceable as a matter of law, but rather, that advocating that the exclusion was valid and enforceable in the litigation would be supportable.

As to the scope of the exclusion, FFIC's counsel concluded that:

> it is clearly reasonable to assert the position that the exclusion applies on its face to claims arising from the malignant diseases, as well as 'asbestosis.' However, with no case law directly on point, and with rational arguments for alternative readings of the language, one cannot predict with certainty that a court would apply that interpretation as a matter of law. The outcome of a dispute on this issue may depend upon the evidence that can be developed concerning negotiations or communications about the underwriting of these policies (or the umbrella policies), or evidence about the custom or practice in the industry with respect to asbestosis exclusions.

(Hayes Decl., Ex. 1 (AIC029561-62).) Thus,

(*Id.*)

The Court finds that based on the evidence in the record there is a genuine issue of material fact as to whether GRC could have prevailed on the validity and scope of the asbestosis

11

exclusion. Thus, the Court cannot find as a matter of law that FFIC was not potentially liable. *See In re Cossu*, 410 F.3d at 595.

### iii. Reserves.

FFIC set reserves for the excess policies at a nominal amount, $1, until after the settlement was reached. (Declaration of Scott M. Bloom in Opposition to American Re's Motion ("Opp. Bloom Decl."), Ex. 5 at 50:3-13.) American Re argues that the reserve setting history demonstrates that FFIC did not actually value the potential liability and settlement value of the excess policies at $12 million. American Insurance submits evidence demonstrating the reason the reserves were initially set low and then raised after the settlement was reached was based on logistics and timing issues, as opposed to any reflection of FFIC's actual valuation of the settlement and potential liability under the excess policies. (Opp. Bloom Decl., Ex. 4 at 55:11-21 and Ex. 5 at 50:3-51:16, 56:5-13.) The Court finds such evidence sufficient to create a genuine issue of material fact as to whether FFIC considered the settlement value of the excess policies to be worth $12 million at the time the settlement was executed.

### d. Payment of Settlement Funds.

American Re argues that the evidence demonstrates the $12 million allocated to settle liability on the excess policies has not actually been distributed to pay for any claims, and thus demonstrates that the $12 million was not actually intended by FFIC as settlement for these policies. American Insurance counters that the settlement was intended to resolve the future liabilities of FFIC under the excess policies, and thus whether the settlement funds have actually been used by GRC to pay claimants is irrelevant. The Ninth Circuit has held that settlements between an insured and insurer which address future claims are reimbursable by reinsurance pursuant to an indemnification contract. *Insurance Co. of State of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 526 (9th Cir. 1990). Therefore,

Accordingly, the Court denies American Re's motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court DENIES the cross-motions for summary judgment by American Insurance and American Re.

**IT IS SO ORDERED.**

Dated: November 27, 2006

*Jeffrey S. White*
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE